JL

WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| John Anthony Cole,<br>Plaintiff,<br>v.<br>Unknown DeRose, et al.,<br>Defendants. | No. CV-26-05032-PHX-JAT (ASB)<br><br>**ORDER** |

On July 17, 2026, pro se Plaintiff John Anthony Cole, who is confined in the Arizona State Prison Complex (ASPC)-Eyman, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed in Forma Pauperis. In a July 24, 2026 Order, the Court denied the deficient Application to Proceed with leave to refile within 30 days.

On August 7, 2026, Plaintiff filed a new Application to Proceed In Forma Pauperis (Doc. 7), and on August 19, 2026, he filed another Application to Proceed (Doc. 11). The Court will grant the August 7 Application to Proceed; deny the August 19 Application to Proceed as moot; order Defendant DeRose to answer Count Two of the Complaint; order Defendants DeRose, Munoz, and Pong to answer Count Seven; and dismiss the remaining claims and Defendants without prejudice.

## I. Application to Proceed In Forma Pauperis and Filing Fee

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C.

§ 1915(b)(1). The Court will assess an initial partial filing fee of $26.42. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**II. Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III. Complaint**

In his seven-count Complaint, Plaintiff sues Psychiatry Department Lead Estrada; Psychiatrist Atekwane; Psychiatry Nurse Practitioners Munoz, Martin Pong, and Kila Lair; Psychiatry Associate Counselors DeRose and Castillo; Physician's Assistant Shields; "Psych" Cash; NaphCare employee Holland; and Jane/John Does 1-6.[1] (Doc. 1 at 1-3.) Plaintiff brings claims regarding retaliation, denial of his right to access the courts, inadequate psychiatric care, and denial of equal protection and due process. (*Id.* at 5, 8, 11, 12, 13, 14, 16.) He seeks injunctive, declaratory, and monetary relief. (*Id.* at 18.)

Plaintiff alleges the following facts that apply to each of his claims:

At the relevant time, Plaintiff was housed in the Staff Assault Deterrence Housing Unit (SADHU) at ASPC-Lewis, Rast Max Unit. (*Id.* at 6.) Plaintiff was not allowed to have any personal property in the SADHU and had to be escorted by an Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) supervisor. (*Id.*)

On May 26, 2026, Plaintiff was left in the outside recreation cage for four hours, then brought back to the shower, where he remained for another two hours. (*Id.* at 5.) While he was out of his cell, prison staff placed his lunch in his cell. (*Id.*) A non-party sergeant supervised two Correctional Officers (COs), who removed Plaintiff from the shower. The sergeant took Plaintiff's lunch while the COs held Plaintiff "with hands on security as Plaintiff ca[l]mly [and] respectfully explained the situation about prolong[ed] recreation [and] shower due to ADCRR negligence." (*Id.*) The sergeant "did not want to concede, spoke disrespectfully," and took Plaintiff's food without "confirmation" from

[1] Throughout the Complaint, Plaintiff refers to NaphCare as a defendant, but Plaintiff has not specifically sued NaphCare.

other ADCRR staff in the pod. (*Id.*) Plaintiff spat in the sergeant's face "as an energy exchange" but did not "threaten or physically initiate any violence." (*Id.*) Plaintiff was placed in the cell and sprayed with OC pepper gas while he was handcuffed behind his back. (*Id.*) An incident command system (ICS) was activated. (*Id.*) At some point, Plaintiff apparently referred to one of the officers, who was Mexican, as a "border jumping, bean burrito eating bitch." (*Id.* at 5.)

Defendant Munoz "arrived on the scene" of the ICS and stated, "look at him[,] he[']s agitated," "he called us wetback[]s [and] border jumpers," and "get the injection [and] needle." (*Id.* at 5, 6.) Defendant Munoz authorized "an 'unknown forced administered antipsychotropic injection'" into Plaintiff, and one of the Doe Defendants "used a hypodermic needle to force medicate a compliant, rational, sane, lucid, [and] calm Plaintiff," at Defendant Munoz's direction, "for essentially making a 'racially insensitive remark.'" (*Id.* at 5.) There was no medical or mental health emergency, and Plaintiff was not "irate, incoherent, irrational or not in 'conscientious control' of his actions." (*Id.* at 6.)

Plaintiff was placed in an escort movement chair and restrained with handcuffs and restraint straps. (*Id.* at 7.) He was transported to the infirmary, where Defendant Munoz stated, "I know all about your lawsuits, obsession [with] suing," and "Not so bad for a border jumper, your position vs. my position. I call the shots and you're getting a shot." (*Id.*) Plaintiff "cited, stated," "verbally g[ave]," and "coherently recited" to Defendant Munoz all ADCRR Department Orders, state law, Supreme Court case law, and the First, Fourth, Eighth, and Fourteenth Amendments as he "plead[ed] for the cessation of the injection to no avail." (*Id.*)

At some point, Plaintiff submitted a grievance, which a non-party officer "erroneously unprocessed." (*Id.*)

On June 26, 2026, Defendant DeRose determined that Plaintiff had homicidal ideations, and as a result, Plaintiff was placed on a continuous mental health watch and stripped of all clothing, property, and basic life necessities. (*Id.* at 8.) According to Plaintiff, Defendant DeRose issued the "erroneous" watch order because DeRose

"misconstrued" an "empty threat concerning an individual more than 100 miles away." (*Id.*) Defendant DeRose told Plaintiff, "You f_cked up now. I worked with those people. You[r] obsession with law[]suits is as sick as your crimes. I won't allow you to ruin good people's lives and profit while you're doing it because they may have made a mistake, I won't!" (*Id.*) Defendant DeRose was referring to an "incident" on May 8 or 9, 2026, at ASPC-Eyman, in which Plaintiff allegedly was "illegally administered a forced psychotropic medication injection." (*Id.* at 8-9.)

On June 27, 2026, Defendant Pong "advised Plaintiff" that he had been diagnosed with schizophrenia and bipolar disorder. (*Id.* at 9.) According to Plaintiff, there was "no talk, examination, testing, treatment, therapy sessions, psychiatric history sought/requested, family history, blood work or justifiable basis to support the diagnosis." (*Id.*) Plaintiff "did not get to object" to the diagnosis. (*Id.*) Pong told Plaintiff, "You're dangerous [and] you hurt staff members, the least I can do is keep you sedated" and then walked away. (*Id.*)

The next day, Defendant Munoz visited Plaintiff's cell and informed him that he would be placed on psychotropic medications—divalproex sodium and risperidone—"due to his new diagnosis" and to "prevent [Plaintiff's] intelligent filings that [he] claim[s] are prolific." (*Id.*) Defendant Munoz told Plaintiff, "Even if I f_cked up with the injection, I have a whole agency [and] department backing me up and you'll be a walking zombie n[****]r." Thank the border jumper." (*Id.*) Plaintiff "took this statement to be retaliatory measures for exercising his [First] Amendment protected rights" by filing an administrative grievance regarding the forced administration on May 26, 2026, which was "erroneously 'unprocessed.'" (*Id.*)

On June 29, 2026, Defendant DeRose told Plaintiff that Lauren Fulks, a defendant in one of Plaintiff's other pending cases in this Court, was DeRose's friend and that DeRose would "ensure that justice was served by 'lobotomizing' Plaintiff through 'atroph[y]ing his brain [and] flaunted muscular physique.'" (*Id.*) The next day, Defendant DeRose told Plaintiff that he would not be removed from mental health watch "regardless if there were

no justifiable penological reason to continue the watch orders." (*Id.* at 9-10.) Defendant DeRose told Plaintiff, "Your lawsuit obsession has been deaded. I'll make sure you don't have access to any writing materials or legal materials. Can't fight in court with no weapons." (*Id.* at 10.) Plaintiff "took this statement as a retaliatory threat to prevent legal access to the courts to protect NaphCare Inc[.] and Fulks . . . by strategically preventing [P]laintiff from accessing legal mail, legal work product, writing materials, access to mail, telephone, outside prison resources, support systems, social interactions, legal visits, or news media by using her official capacity [and] resources (ADCRR security, cells, equipment, Department Orders, Mental Health Treatment Manual)." (*Id.*)

Plaintiff designates **Count One** as a First Amendment retaliation claim. Plaintiff alleges that Defendant Munoz violated his First Amendment rights by authorizing the forced administration of antipsychotic medication, and one of the Doe Defendants violated his rights by administering the injection, in retaliation for Plaintiff's racial comments. (*Id.* at 5.) Plaintiff asserts that "[t]his was a disciplinary infraction" for which Defendant Munoz "took a personal vendetta" because of an insult to Munoz's heritage. (*Id.* at 7.) Plaintiff contends Munoz "enacted unlaw[ful] vengeance by utilizing his official capacity to have access to ADCRR security measures, medical equipment, authority [and] support that he would not have in his individual capacity." (*Id.*) Plaintiff further asserts that Munoz "used his position as a superior to enforce his personal retaliatory measures to punish Plaintiff and create injuries that were nonexist[e]nt prior to the injection." (*Id.*) Plaintiff claims that had he not "insulted the Mexican people, he would have never been given forced psychotropic medication because Munoz would not have used the statement to retaliate against Plaintiff for a security measure that transpires daily without forced meds." (*Id.*)

Plaintiff designates **Count Two** as a First Amendment retaliation claim. Plaintiff alleges that Defendants DeRose, Munoz, Pong, Castillo, Cash, Shields, Lair, and the Doe Defendants have violated his First Amendment rights "in efforts to deprive Plaintiff of protected activity (namely ac[c]ess to the courts, news media, attorneys, social

correspondence, [and] medical treatment)." (*Id.* at 8.) Plaintiff asserts that Defendants' positions "allow them to utilize tools [and] resources at their disposal that in an individual capacity they would not have access to implement nor authority to execute illegal measure[s]" to deprive Plaintiff of his "ADCRR Department Order rights which have been construed, constructed, crafted and pr[e]scribed to protect" his rights under the Arizona and United States Constitutions. (*Id.*) Plaintiff contends that "Defendant[]s plotted, planned, conspired [and] strategically colluded to deprive" him of his rights under the Eighth and Fourteenth Amendments by "falsifying, fabricating, [and] fraudulently reporting inaccurate interactions between" Defendants Castillo, Cash, Shields, Lair, and the Doe Defendants. (*Id.* at 10.) Plaintiff claims that each named Defendant "reiterates that 'hig[h]er ups Central Office is mad at you. We have to use W.O.'s as security measures so that we keep you isolated [and] restricted from people [and] the courts." (*Id.*)

As his injury for Counts One and Two, Plaintiff alleges that he suffered post-traumatic stress disorder, anxiety, mental/emotional turmoil, rashes, hives, injection site soreness, vomiting, body chills, cold sweats, brain fog, muscle aches and pains, dizziness, unconsciousness, "induced anxiety," "fear/duress," diarrhea, sensory deprivation, prevention of communication with his minor child, and "blocking current news [and] world events - distress." (*Id.* at 5, 8.)

Plaintiff designates **Count Three** as a Sixth Amendment access-to-the-courts claim. Plaintiff alleges that Defendants DeRose, Munoz, Castillo, Estrada, and the Doe Defendants have "delayed, denied, deposed, blocked, [and] hindered" Plaintiff's access to the courts and ADCRR's institutional administrative remedy process. (*Id.* at 11.) Plaintiff asserts that the use of ADCRR "equipment"—that is, cells, handcuffs, and "security"—has enabled each Defendant to "circumvent" Department Order 1103 and prevent Plaintiff from legally obtaining non-contraband writing material and legal information to pursue his legal claims against NaphCare "and friends." (*Id.*) Plaintiff contends that "[t]he measures taken" from June 26 through July 17, 2026 "have been designed with malicious intentions to restrict [and] limit Plaintiff from whistleblowing the illegal conditions of confinement

where [he] has no redress or recourse through the Court or ADCRR administrative remedy in order to seek relief." (*Id.*) As his injury, Plaintiff claims that he is prevented from accessing the law library and legal resources and materials, which prevents him from "properly [and] intelligently litigating his prior pending cases or seeking redress in new cases."[2] (*Id.*)

Plaintiff designates **Count Four** as an Eighth Amendment medical care claim. Plaintiff realleges that on May 26, 2026, Defendant Munoz "authorized the illegal forced administration of "antipsychotropic" medication against Plaintiff's will and "conscientious consent," and one of the Doe Defendants injected him against his will. (*Id.* at 12.) Plaintiff claims that Defendant Atekwane "approved [Defendant] Munoz to authorize the injection as a superior medical provider." (*Id.*) Plaintiff asserts that no emergency was "present," and there was no previous mental health issue, diagnosis, treatment, "concerns," or prescription. (*Id.*) Plaintiff alleges that Defendant Holland "manipulated" Plaintiff's medical records by "reading false information" to Defendant Munoz, stating that Plaintiff had a prescription for "antipsychotropic" medication and "no HNR (health needs request) for a previous injection" on May 9, 2026, "where photos were taken after Plaintiff broke out in hives." (*Id.*) Plaintiff contends that Defendant Holland verbally "circumvented" records to justify the administration of psychotropic medication. (*Id.*) Plaintiff claims that he received an injection of unprescribed medication as a punishment for an insult and as retaliation, which resulted in injuries "still not fully known to [P]laintiff." (*Id.*) Plaintiff asserts that Defendants Munoz, Holland, Atekwane, and the Doe Defendants violated Plaintiff's Eighth Amendment rights by "utilizing means, tools, resources [and] equipment that they would not individually have access to," including security personnel and measures that "aided [and] assisted in Plaintiff's rights being violated." (*Id.*) Plaintiff alleges the same injuries as in Count One.

---

[2] Plaintiff currently has three other civil rights cases pending in this Court. *See Cole v. Ortgea*, CV-26-00973-PHX-JAT (ASB); *Cole v. Lund*, CV 26-01451-PHX-JAT (ASB); *Cole v. Morrow*, CV-26-01621-PHX0JAT (ASB).

Plaintiff designates **Count Five** as a Fourteenth Amendment "equal protection clause/due process" claim. Plaintiff alleges that he is African-American, Cherokee Nation Indian, and a practitioner of Judaism; is not seriously mentally ill (SMI) and does not have a mental health disorder; and is "assigned to max security." (*Id.* at 13.) Plaintiff claims that he received a forced injection of psychotropic medication for a non-threatening, verbal, racially derogatory insult. (*Id.*) Plaintiff contends that "[n]o other similarly situated inmate in [his] situation would have ever 'legally' received the 'treatment'"—which Plaintiff characterizes as punishment without due process—for similar "disciplinary conduct." (*Id.*) Plaintiff asserts that Defendants Munoz, Holland, Atekwane, Estrada, and the Doe Defendants "utilized ADCRR tools, materials, equipment, policies, medicine, resources, [and] security personnel that in their individual capacity they would not have been able to successfully violate Plaintiff's" Fourteenth Amendment rights. (*Id.* at 13.) Plaintiff alleges that NaphCare's mental health treatment manual "allowed a culture, practice, custom [and] policy to designate justification for unqualified positioned employees to utilize wrongful policies/methods of treatment to make an exception to Plaintiff's situation [and] treated him out of accord as others." (*Id.*) Plaintiff alleges the same injuries as in Count One.

Plaintiff designates **Count Six** as a Fourteenth Amendment equal protection claim. Plaintiff alleges that since June 26, 2026, Defendants DeRose, Munoz, Pong, Castillo, Cash, Shields, and Estrada have violated Plaintiff's right to equal protection. (*Id.* at 14.) Plaintiff claims that he has been "erroneously assigned a mental health disorder without any assessment," and that his behavior, conduct, and mental state or status did not warrant placement on a mental health watch order. (*Id.* at 14, 15.) Plaintiff contends that Defendant DeRose "used NaphCare" to pursue a "personal agenda by turning a [mental health watch order] into a punitive, restrictive isolation security status as a means to be cruel [and] unusual punishment." (*Id.*) Plaintiff asserts that Defendant DeRose has "conspired, colluded [and] circumvented Watch Order reports by falsifying, fabricating, and fraudulently reporting inaccurate observations" to prevent Plaintiff from being removed from mental health watch status. (*Id.* at 14-15.) Plaintiff further claims that Defendant

DeRose has "recruited [and] conspired" with Defendant Castillo to "exchange roles of assignment as 'primary' treatment specialist in order to treat Plaintiff different than other similarly situated inmates" on mental health watch status. (*Id.* at 15.) Plaintiff alleges that Defendant Castillo has used her position to perpetuate Plaintiff's status by failing to perform her "obligated duties in a consistent manner," as she does with other prisoners who are not subject to extended mental health watch orders. (*Id.*)

Plaintiff asserts that Defendants Cash and Shields "have also participated" in NaphCare's Psychology Department meetings, which Defendant Estrada has supervised, concerning Plaintiff's placement and continuation on mental health watch orders. (*Id.*) Plaintiff claims each Defendant, except Estrada, has informed Plaintiff that he is not a "normal" mental health watch prisoner; that directives and orders to keep Plaintiff on mental health watch status come from ADCRR's Central Office; and that because of his "behavior or 'treatment,'" and because he is "dangerous," he cannot have property, access to the courts, or "humane treatment that other inmates in his same condition of confinement or status would receive." (*Id.*)

Plaintiff contends that "non-mental health disorder or SMI" prisoners would not have to "endure[] hardships of conditions of confinement" if they were not erroneously assigned a mental health disorder and watch order status, because they would be "properly assessed, evaluated, tested, examined, diagnosed, treated, counseled, and subjected to" the watch order procedures in Department Order 1103, which would be "properly enforced." (*Id.*) Plaintiff asserts that without Defendants' "official capacity," he would not have been treated differently from other similarly situated prisoners. (*Id.* at 14.) As his injury, Plaintiff alleges that he has been denied court access, access to a law library, and legal resources material; he has been prevented from "legal/social [illegible] of family," a "support system," legal redress, and administrative remedies; and he has suffered distress. (*Id.*)

Plaintiff designates **Count Seven** as a Fourteenth Amendment due process claim. Plaintiff alleges that Defendants Munoz, DeRose, Atekwane, Estrada, Castillo, Cash,

Shields, and the Doe Defendants violated his due process rights through the forcible administration of psychotropic medication on May 26, 2026, and Defendants' conduct from June 26 through July 17, 2026. (*Id.* at 16.)

## IV. Discussion of Complaint

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A. Retaliation (Counts One and Two)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *See Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011). "A successful First Amendment retaliation claim by a prisoner requires '(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" *Long v. Sugai*, 91 F.4th 1331, 1339 (9th Cir. 2024) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005)). The retaliation test is conjunctive; accordingly, if Plaintiff fails to satisfy any element, his retaliation claims fail.

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." *Watison v. Carter*, 688 F.3d 1108, 1114 (9th Cir. 2012) (internal citations omitted). The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities, *Rhodes*, 408 F.3d at 567-68, and a causal connection between the adverse action and the protected

conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred, *Watison*, 688 F.3d at 1114. Mere speculation of retaliation is insufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882-83 (9th Cir. 2011); *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). Allegations that support retaliatory motive may include (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882. A plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison*, 688 F.3d at 1114. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id.*

**1. Count One**

In Count One, Plaintiff alleges that Defendant Munoz authorized the forcible injection of a psychotropic medication in retaliation for Plaintiff calling a prison officer a "border jumping, bean burrito eating bitch." Plaintiff claims that one of the Doe Defendants administered the injection pursuant to Defendant Munoz's authorization. Plaintiff's retaliation claim in Count One fails.

First, Plaintiff did not engage in "protected conduct" under the First Amendment. *See*, *e.g.*, *Miller v. Woofter*, 2025 WL 1042953 (D. Mont. Apr. 8, 2025) (noting that under *Rhodes*, "[n]ot all speech is protected, and the Ninth Circuit has defined the scope of such protections fairly narrowly."). In *Bird v. Dzurenda*, 131 F.4th 787, 791 (9th Cir. 2025), the Ninth Circuit concluded that a prisoner's request for a cell transfer based on concerns with his cellmate did not constitute "protected conduct" under clearly established law. *Id.* at 791. District courts in the Ninth Circuit, including this Court, have also concluded that retaliation for speech may not give rise to a First Amendment claim. *See Thomas v. MCSO*, 2009 WL 1311992, at *3 (D. Ariz. May 12, 2009) (calling an officer a derogatory name is

not protected conduct); *see also Quezada v. Herrera*, 2012 WL 1076130, at *4 (E.D. Cal. Mar. 29, 2012) (complaining that inmates had to wear hairnets not protected speech); *Ruiz v. Cal. Dep't of Corr.*, 2008 WL 1827637, at *2 (C.D. Cal. Apr. 22, 2008) (prisoner's comments expressing dissatisfaction about matters of personal concern to inmate was not a matter of public concern protected by the Free Speech Clause).

Second, Plaintiff's allegations belie his assertion that Defendant Munoz ordered the forced injection of psychotropic medication *because of* the racially derogatory statement Plaintiff made. Plaintiff alleges that he spat in a sergeant's face. The Court, drawing on common sense and its judicial experience, finds it more plausible that an antipsychotic medication was administered because Plaintiff assaulted a correctional officer than for his racially derogatory remark. *See Iqbal*, 556 U.S. at 678-79. In the absence of any plausible allegations to the contrary, Plaintiff fails to state a retaliation claim based on the forcible administration of psychotropic medication.

For the foregoing reasons, the Court will dismiss Count One.

**2. Count Two**

Plaintiff alleges that Defendant DeRose told Plaintiff that a defendant in one of Plaintiff's other cases was DeRose's friend; that DeRose would "ensure that justice was served by 'lobotomizing' Plaintiff through 'atroph[y]ing his brain [and] flaunted muscular physique'"; that Plaintiff would not be removed from mental health watch "regardless if there were no justifiable penological reason to continue the watch orders"; that his "lawsuit obsession had been deaded"; and that DeRose would "make sure" Plaintiff did not have access to any writing materials or legal materials. Liberally construed, Plaintiff states a retaliation claim in Count Two against Defendant DeRose.

Plaintiff fails to state a retaliation claim in Count Two against any other Defendant. Plaintiff alleges that Defendant Munoz told Plaintiff that he would be placed on psychotropic medications "due to his new diagnosis" and to "prevent [Plaintiff's] intelligent filings." Plaintiff claims that Defendant Munoz told Plaintiff, "Even if I f_cked up with the injection, I have a whole agency [and] department backing me up." (*Id.*)

Plaintiff alleges that he construed Defendant Munoz's statements and actions as retaliation for Plaintiff's grievance regarding the May 26, 2026 incident, which Plaintiff asserts was unprocessed. Plaintiff has not alleged facts to support that Defendant Munoz was aware of the unprocessed grievance, and Munoz's statement that he had a "whole agency [and] department backing [him] up" is too vague to support an inference that Munoz not only knew about Plaintiff's grievance, but placed Plaintiff on antipsychotic medications *because of* the grievance or any other protected conduct by Plaintiff.

With respect to Defendant Pong, Plaintiff alleges that Pong diagnosed him with schizophrenia and bipolar disorder in retaliation for an "incident" that occurred on May 8 or 9, 2026. Plaintiff does not describe the incident, and the Court therefore cannot infer that Plaintiff engaged in any protected activity during that incident. Accordingly, Plaintiff fails to state a retaliation claim against Defendant Pong.

Plaintiff's remaining allegations in Count Two are against Defendants Castillo, Cash, Shields, Lair, and the Doe Defendants collectively. A complaint "does not require 'detailed factual allegations,'" but it must plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Accordingly, a plaintiff must "allege overt acts with some degree of particularity such that his claim is set forth clearly enough to give defendants fair notice" of the allegations against them. *Ortez v. Washington County*, 88 F.3d 804, 810 (9th Cir. 1996); *see also Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) ("A plaintiff must identify what action each Defendant took that caused plaintiff's harm, without resort to generalized allegations against Defendants as a whole.") (citation and internal quotation omitted); *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (N.D. Cal. 2014) (complaint failed to satisfy Rule 8 where it lacked "facts of defendants' specific wrongdoing to provide fair notice as to what each defendant is to defend."). Courts consistently conclude that a complaint that "lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Gen-Probe,*

*Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).

Plaintiff fails to specifically identify what Defendants Castillo, Cash, Shields, Lair, and the Doe Defendants *each* did or failed to do that resulted in any injury to Plaintiff. Plaintiff therefore fails to state a retaliation claim in Count Two against Defendants Castillo, Cash, Shields, Lair, and the Doe Defendants.

**B. Count Three**

**1. Access to the Courts**

Access-to-courts rights do not exist in an "abstract, freestanding" form. *Lewis v. Casey*, 518 U.S. 343, 367 (1996). Rather, prisoners have the "'right[ ] to litigate without active interference,' a guarantee that exists so prisoners have a 'viable mechanism to remedy prison injustices.'" *Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2005) (quoting *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011); *Rhodes*, 408 F.3d at 567). The right of access to the courts is only a right to the means to file petitions or complaints in federal court and not a right to discover claims or even to ligate them effectively once filed with a court. *Lewis*, 518 U.S. at 350. The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356.

The Ninth Circuit has "traditionally differentiated between two types of access-to-court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference." *Blaisdell*, 729 F.3d at 1243 (citing *Silva*, 658 F.3d at 1102). Prisoners must receive "affirmative assistance in the 'preparation and filing' of certain legal pleadings," but "the Constitution does not specify the form such assistance must take." *Id.* (quoting *Silva*, 658 F.3d at 1102). "The right to litigation assistance, however, is limited to the tools prisoners need 'in order to attack their sentences, [either] directly or collaterally, and in order to challenge the conditions of their

confinement.'" *Silva*, 658 F.3d at 1102 (quoting *Lewis*, 518 U.S. at 355). "[T]he right to legal assistance is limited to the pleading stage." *Id.* (citing *Lewis*, 518 U.S. at 384).

"The heart of the anti-interference right is "the presentation of constitutional, civil rights and habeas corpus claims." *Blaisdell*, 729 F.3d at 1243 (citation omitted). "But, by virtue of their 'broader right to petition the government for a redress of [their] grievances under the First Amendment,' prisoners must also have opportunities to pursue certain other types of civil litigation." *Id.* (quoting *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001)). A prisoner's First Amendment right to petition the government, including the right to file civil actions in court that have a reasonable basis in fact or law, "does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from 'erect[ing] barriers that impede the right of access of incarcerated persons.'" *Id.*

As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury"—that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348-49. To show actual injury or prejudice with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim that he wished to present. *Id.* at 352-53. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

Plaintiff fails to state an access-to-the-courts claim in Count Three. Plaintiff alleges that Defendants DeRose, Munoz, Castillo, Estrada, and Jane/John Does have "delayed, denied, deposed, blocked, [and] hindered" Plaintiff's access to the courts in his other pending cases. However, by June 26, 2026—when Plaintiff alleges Defendants' conduct began—Plaintiff had already filed Complaints in his pending cases, and he therefore fails to state an affirmative assistance claim. Plaintiff also does not specifically identify any "active interference" by any named Defendant, nor does he allege that he missed a deadline

or was otherwise unable to litigate his other cases due to active interference by any named Defendant.[3] Plaintiff therefore fails to state an access-to-the-courts claim in Count Three.

**2. Access to the Grievance Process**

In Count Three, Plaintiff also claims that Defendants "delayed, denied, deposed, blocked, [and] hindered" Plaintiff's access to ADCRR's administrative remedy process. Prisoners have a First Amendment right to file prison grievances and to be free from retaliation for doing so. *Watison*, 668 F.3d at 1114. Prisoners do not have "'a separate constitutional entitlement to a specific prison grievance procedure," *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)), but if there is an established grievance procedure, the denial of access to the grievance process may state a constitutional violation, *Bradley*, 64 F.3d at 1279; *see also Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989).

Plaintiff fails to specifically allege how any named Defendant denied him access to the grievance process. Thus, he fails to state a claim for denial of access to the grievance process.

. . . .

. . . .

. . . .

---

[3] The Court may take judicial notice of its dockets. *See White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010). The Court takes judicial notice that in *Cole v. Ortega*, CV-26-00973, between June 26 and July 17, 2026, Plaintiff filed the following documents: an Ex Parte Motion for Temporary Restraining Order, a Notice to the Court, a Subpoena, and a Motion for Extension of Time to File a Response to Defendants' Motion for Summary Judgment. (*See* Docs. 49, 51, 52, 59 in CV-26-00973.) Plaintiff had no filing deadlines in that matter before he filed the Complaint in this case.

In *Cole v. Lund*, CV-26-01451, no documents were filed between June 26 and July 17, 2026, and Plaintiff had no filing deadlines in that matter during that period.

In *Cole v. Morrow*, CV-26-01621, on July 1, 2026, the Court issued a Screening Order requiring Defendants to answer portions of the Complaint. (*See* Doc. 9 in CV-26-01621.) Plaintiff had no filing deadlines in that matter before he filed the Complaint in this case.

**C. Due Process (Count Seven)**

**1. Forced Administration of Psychotropic Medication**

Plaintiff has a due process right to refuse medication. *See Cruzan by Cruzan v. Dir. Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) ("[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment."); *Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) ("The due process clause of the Fourteenth Amendment substantively protects a person's rights . . . to refuse unwanted medical treatment, and to receive sufficient information to exercise these rights intelligently."). Plaintiff also has a significant liberty interest in avoiding involuntary administration of psychotropic drugs. *See Washington v. Harper*, 494 U.S. 210, 221-22 (1990), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty. *United States v. Gillenwater*, 749 F.3d 1094, 1100 (9th Cir. 2014) (citing *Harper*, 494 U.S. at 229). But an "overriding justification and a determination of medical appropriateness" may justify the forced administration of "antipsychotic drugs on a convicted prisoner." *Green v. Demire*, 691 F.3d 917, 922-23 (9th Cir. 2012) (quoting *Riggins v. Nevada*, 504 U.S. 127, 135 (1992)). "The Due Process Clause does not require that an inmate's mental state become an emergency before involuntary treatment may be imposed." *Id.* at 924 (citing *Riggins*, 504 U.S. at 135).

There is a substantive component and a procedural component to a due process claim based on forcible administration of antipsychotic medication. As the Supreme Court observed in *Harper*, "the substantive issue is what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will; the procedural issue is whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient." 494 U.S. at 220. Thus, the substantive component requires the government to show both the need for, and medical appropriateness of, the antipsychotic medication. *Riggins*, 504 U.S. at 135. Generally, due process requires the following procedural protections before a state may forcibly administer antipsychotic

drugs: (1) a hearing; (2) a neutral and detached trier of fact; (3) notice; (4) the inmate's right to be present at the adversarial hearing; (5) the inmate's right to cross examine witnesses; and (6) the right to appeal. *Green*, 691 F.3d at 924 (citing *Harper*, 494 U.S. at 228, 231, 235).

However, the extent of a prisoner's right to avoid the unwanted administration of antipsychotic drugs "must be defined in the context of the inmate's confinement." *United States v. Loughner*, 672 F.3d 731, 745 (9th Cir. 2012) (quoting *Harper*, 494 U.S. at 222). The Supreme Court in *Harper* observed that "there can be little doubt as to both the legitimacy and the importance of the governmental interest presented here. There are few cases in which the State's interest in combating the danger posed by a person to both himself and others is greater than in a prison environment, which, 'by definition,' is made up of persons with 'a demonstrated proclivity for antisocial criminal, and often violent, conduct.'" 494 U.S. at 225 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). Thus, involuntary administration of antipsychotic medication in emergency circumstances, even without the due process protections outlined in *Harper*, may not violate the Fourteenth Amendment. *See Kulas v. Valdez*, 159 F.3d 453, 455-56 (9th Cir. 1998) (differentiating plaintiff's case from one where officials could demonstrate a prisoner "posed such an imminent and serious danger to himself or others that the minimal procedural requirements of *Harper*—notice and the right to be present at and participate in a hearing—could not be met"); *cf. Jefferson v. Helling*, 324 F. App'x 612, 613 (9th Cir. 2009) (affirming summary judgment on due process claim arising from emergency transfer to prison's mental health unit where plaintiff failed to offer any authority that he was entitled to a hearing prior to the short-term emergency detention); *see also Hubbard v. Ramos*, No. 19-cv-07508-JST, 2022 WL 595879, at * 10 (N.D. Cal. Feb. 28, 2022) (noting that "*Harper*, *Riggins*, and *Loughner* all addressed the [due process] requirements for non-emergency medications, and the Ninth Circuit has not explicitly addressed the application of these standards to emergency contexts").

Here, Plaintiff's allegations do not support that the involuntary administration of psychotropic medication on May 26, 2026 violated either his substantive or his procedural due process rights. The available facts suggest that Plaintiff posed an "imminent and serious danger" to prison staff, *see Kulas*, 159 F.3d at 455-56, such that notice and a hearing were not required before the medication was administered. Absent additional information regarding the circumstances in which the psychotropic medication was administered, Plaintiff's allegations are insufficient to state a due process claim.

**2. Mental Health Diagnoses and Watch Orders**

Plaintiff alleges that on June 26, 2026, Defendant DeRose erroneously determined that Plaintiff had homicidal ideations, and as a result, Plaintiff was placed on a continuous mental health watch and stripped of all clothing, property, and basic life necessities. Plaintiff claims that on June 27, 2026, Defendant Pong "advised Plaintiff" that he had been diagnosed with schizophrenia and bipolar disorder; Pong did not conduct any examination, testing, treatment, therapy sessions, psychiatric history sought/requested, family history, or blood work to support the diagnoses; Plaintiff "did not get to object" to the diagnoses; and Pong told Plaintiff, "You're dangerous [and] you hurt staff members, the least I can do is keep you sedated." Plaintiff also alleges that on June 28, 2026, Defendant Munoz told Plaintiff that he would be placed on psychotropic medications "due to his new diagnosis" and to "prevent [Plaintiff's] intelligent filings that [he] claim[s] are prolific." Plaintiff claims that on June 29, 2026, Defendant DeRose told Plaintiff that he would not be removed from mental health "regardless if there were no justifiable penological reason to continue the watch orders." Plaintiff asserts that he remained on mental health watch as of July 17, 2026, the day he filed the Complaint. Liberally construed, these allegations are sufficient to state due process claims against Defendants DeRose, Pong, and Munoz. The Court will require Defendants DeRose, Pong, and Munoz to answer the due process claim in Count Seven with respect to Plaintiff's mental health diagnoses and placement and continuation on mental health watch status.

Plaintiff fails to state a due process claim against any other named Defendant. Plaintiff alleges that Defendant Castillo has used her position to perpetuate Plaintiff's status by failing to perform her "obligated duties in a consistent manner," as she does with other prisoners who are not subject to extended mental health watch orders. This allegation is wholly vague and conclusory and cannot support a due process claim against Castillo. Likewise, Plaintiff asserts that Defendants Cash and Shields "have also participated" in NaphCare's Psychology Department meetings, which Defendant Estrada has supervised, concerning Plaintiff's placement and continuation on mental health watch orders. Plaintiff provides no facts regarding any Psychology Department meetings that Defendant Estrada supervised or that Defendants Cash and Shields participated in, let alone allege facts to support that during those meetings, Defendants Estrada, Cash, and Shields engaged in any conduct that violated Plaintiff's due process rights.

**D. Eighth Amendment (Count Four)**

Although Plaintiff characterizes Count Four as an Eighth Amendment medical care claim, it is more properly analyzed as a conditions-of-confinement claim. "[T]he treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "The Eighth Amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (internal quotation marks and citations omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id.* (quoting *Gregg v. Georgia*, supra, 428 U.S. 153, 183 (1976) (joint opinion); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

The Constitution, however, "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citation omitted). "[E]very injury suffered

by an inmate does not necessarily translate into constitutional liability for prison officials." *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996).

To state an Eighth Amendment conditions of confinement claim, a plaintiff must meet two requirements, one subjective and one objective. *Id.* (citing *Farmer*, 511 U.S. at 834-35). "First, the deprivation alleged must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted).

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Plaintiff's allegations in Count Four do not support a conclusion that the forced administration of psychotropic medication on May 26, 2026 violated his Eighth Amendment rights. As discussed, Plaintiff's allegations suggest that his assaultive behavior, which posed a danger to others, precipitated the administration of the medication. Absent additional plausible facts to the contrary, Plaintiff fails to allege that any named Defendant was aware of and disregarded a substantial risk of serious harm to Plaintiff because of the forced administration of antipsychotic medication.

For the foregoing reasons, the Court will dismiss Count Four.

**E. Equal Protection (Counts Five and Six)**

The Equal Protection Clause requires the State to treat "all similarly situated people alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann v. Cal. Dep't of Corr. Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). The United States Supreme Court has recognized "successful equal protection claims brought by a

'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002).

The first step in determining whether Defendants violated Plaintiff's right to equal protection is to identify the relevant class to which he belonged. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Id.* at 1167. "Similarly situated" persons are "in all relevant respects alike." *Silveira v. Lockyer*, 312 F.3d 1052, 1087-88 (9th Cir. 2002).

Plaintiff has not specifically identified any particular group of similarly situated prisoners who were treated more favorably. It is not enough for Plaintiff to make a blanket allegation that "[n]o other similarly situated inmate in [his] situation would have ever 'legally' received the 'treatment'" that he received. *See Thornton*, 425 F.3d at 1166 ("An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff.") (internal quotation marks omitted).

Plaintiff also fails to allege facts to support that there was no rational basis for any difference in treatment. Treatment of prisoners is highly discretionary, and it is well-settled that courts are to afford prison officials great deference in their management of correctional facilities. *See Hewitt v. Helms*, 459 U.S. 460 (1983); *Hutto v. Finney*, 437 U.S. 678 (1976); *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Accordingly, many courts have found that prisoners' class-of-one claims challenging their conditions of confinement or alleging arbitrary treatment are not cognizable due to the discretionary decision-making inherent in the management of prisons and treatment of prisoners. *See*, *e.g.*, *Rodriguez v. Dupnik*, CV 12-0405-TUC-CKJ, Doc. 91 at 4-6 (D. Ariz. 2013) (dismissing prisoner's class-of-one claim alleging that he was treated differently than other inmates in administrative segregation); *Dawson v. Norwood*, 1:06-cv-914, 2010 WL 2232355, at *2 (W.D. Mich. June 1, 2010) (adopting Magistrate

Judge's finding that "class-of-one equal protection theory has no place in the prison context where a prisoner challenges discretionary decisions regarding security classifications and prisoner placement").

Here, Plaintiff's allegations concerning his placement and continuation on mental health watch orders are insufficient to support that this Court should not afford the requisite great deference to Plaintiff's providers' discretionary decisions regarding his mental health treatment. Plaintiff has not sufficiently described Defendants' alleged conduct with respect to the mental health watch orders to support that there was *no* rational basis for the orders.

For the foregoing reasons, Plaintiff fails to state an equal protection claim in the Complaint, and the Court will dismiss Grounds Five and Six.

## V. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing

with the Court. Plaintiff is not required serve Defendants with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendant, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D. Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's August 7, 2026 Application to Proceed In Forma Pauperis (Doc. 7) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $26.42.

(3) Plaintiff's August 19, 2026 Application to Proceed In Forma Pauperis (Doc. 11) is **denied as moot**.

(4) Counts One, Three, Four, Five, and Six are **dismissed** without prejudice.

(5) Defendants Estrada, Atekwane, Lair, Castillo, Shield, Cash, Holland, and Jane/John Does 1-6 are **dismissed** without prejudice.

(6) If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be filed on the court-approved form and retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed),

and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(7) Defendant DeRose must answer Count Two. Defendants DeRose, Pong, and Munoz must answer Count Seven.

(8) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants DeRose, Pong, and Munoz.

(9) Plaintiff must complete[4] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(10) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(11) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(12) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(13) A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within**

---

[4] If a Defendant is an officer or employee of the Arizona Department of Corrections, Rehabilitation & Reentry, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections, Rehabilitation & Reentry unless the officer or employee works there.

**30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(14) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(15) Defendants DeRose, Pong, and Munoz must answer the relevant portions of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(16) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(17) This matter is referred to Magistrate Judge Alison S. Bachus pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 19th day of October, 2026.

James A. Teilborg
Senior United States District Judge